**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

SARAH DEPOIAN,

      Plaintiff,

v.

MERLE BERGER,

      Defendant.

Civil Action No. 1:23-cv-13063

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
MERLE BERGER'S MOTION TO DISMISS ALL CLAIMS OR IN THE
ALTERNATIVE CERTIFY THE OPERATIVE QUESTION OF LAW
TO THE MASSACHUSETTS SUPREME JUDICIAL COURT**

Respectfully submitted,

MERLE BERGER, M.D.,

By his attorneys,

*/s/ Ian Pinta*
Ian J. Pinta (BBO # 667812)
Gregory Browne (BBO # 708988)
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, Massachusetts 02110
(617) 720-2626
ipinta@toddweld.com
gbrowne@toddweld.com

Dated: February 12, 2024

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ....................................................................................ii-iv

I.    INTRODUCTION ................................................................................1

II.   FACTUAL BACKGROUND................................................................2

III.  LEGAL STANDARD..........................................................................3

IV.  ARGUMENT......................................................................................4

      i.    Counts I and II Must be Dismissed Because Fraudulent
           Concealment is not an Independent Cause of Action .........................4

      ii.   All Three Counts are Barred by the Statute of Repose ......................5

           A.  History and Purpose of the Statute of Repose ...............................6

           B.  Regardless of Ms. Depoian's Legal Theories, her Action
               is Subject to and Barred by the Statute of Repose.........................8

           C.  The "Foreign Object" Exception Does not Apply .......................11

           D.  The Statute of Repose Period Cannot be Tolled
               or Extended for any Reason..........................................................12

           E.  *Chace v. Curran* is Inapposite ...................................................14

      iii.  Additional Reasons to Dismiss Count III.........................................18

      iv.  Alternatively, the Court Should Certify the Operative
           Question of Law to the Supreme Judicial Court ...............................19

V.    CONCLUSION..................................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abdallah v. Bain Capital LLC*, 752 F.3d 114 (1st Cir. 2014)........................................................ 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................................................ 3

*Ashley v. New York State Off. of Child. & Fam. Servs.*,
    33 F. Supp. 3d 76 (D. Mass. 2014) ........................................................................... 6, 11, 12

*Baldyga v. Town of Dudley*, No. 072319A,
    2009 WL 323384 (Mass. Super. Jan. 13, 2009) ........................................................... 5

*Barr v. Galvin*, 793 F. Supp. 2d 463 (D. Mass. 2011)................................................................ 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 3

*Berner v. Delahanty*, 129 F.3d 20 (1st Cir. 1997) ...................................................................... 4

*Bourassa v. LaFortune*, 711 F. Supp. 43 (D. Mass. 1989) ........................................................ 10

*Bradley v. Sugarbaker*, 809 F. 3d 8 (1st Cir. 2015)................................................................... 9

*Bridgwood v. A.J. Wood Constr., Inc.*, 480 Mass. 349 (2018) ........................................... 1, 8, 15

*Chace v. Curran*, 71 Mass. App. Ct. 258 (2008)................................................................. *passim*

*Darke v. Est. of Isner*, No. 022194E,
    2005 WL 3729113 (Mass. Super. Nov. 22, 2005)................................................... 19

*Darviris v. Petros*, 442 Mass. 274 (2004)........................................................................ 8, 9, 19

*Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336 (D. Mass. 2011) ..................................... 4

*Easthampton Sav. Bank v. City of Springfield*, 736 F.3d 46 (1st Cir. 2013) .............................. 20

*Epstein v. C.R. Bard, Inc.*, 460 F.3d 183 (1st Cir. 2006)............................................................. 5

*Fowles v. Lingos*, 30 Mass. App. Ct. 435 (1991)......................................................................... 9

*Gelormini v. Pignatiello*, No. CA934129,
    1994 WL 902947 (Mass. Super. Dec. 9, 1994) ......................................................... 11

*Harlfinger v. Martin*, 435 Mass. 38 (2001) ...................................................................... 6, 7, 10

*Harry v. Countrywide Home Loans Inc.*,
    219 F. Supp. 3d 228 (D. Mass. 2016)......................................................................... 5

*Hayden v. McKeon*, 103 Mass. App. Ct. 1106 (2023) ............................................................. 11, 17

*Heinrich ex rel. Heinrich v. Sweet*, 62 F. Supp. 2d 282 (D. Mass. 1999).................................... 17

*In re Curran*, 855 F.3d 19 (1st Cir. 2017) ..................................................................................... 4

*Ingalls v. Adams Cmty. Bank*, No. CV 19-30006-MGM,
    2020 WL 3722317 (D. Mass. Mar. 25, 2020)........................................................................... 5

*Johnston v. Stein*, 29 Mass. App. Ct. 996 (1990)............................................................8, 9, 15, 16

*Joslyn v. Chang*, 445 Mass. 344 (2005)................................................................................*passim*

*Kingston Hous. Auth. v. Sandonato & Bogue, Inc.*,
    31 Mass. App. Ct. 270 (1991) .................................................................................................. 5

*Klein v. Catalano*, 386 Mass. 701 (1982) ..................................................................................... 6

*Lennar Ne. Properties, Inc. v. Barton Partners Architects Planners Inc.*,
    No. 16-CV-12330-ADB, 2021 WL 231295 (D. Mass. Jan. 22, 2021) ...................................... 5

*Little v. Rosenthal*, 376 Mass. 573 (1978) .................................................................................. 18

*Lubanes v. George*, 386 Mass. 320 (1982) ................................................................................... 9

*McCusker v. United States*, No. 17-CV-11334-DLC,
    2023 WL 8627666 (D. Mass. Dec. 13, 2023)......................................................................... 8, 9

*Moran v. Benson*, 100 Mass. App. Ct. 744, rev. den., 489 Mass. 1108 (2022) ........................... 10

*Nett ex rel. Nett v. Bellucci*, 269 F.3d 1 (1st Cir. 2001)................................................. 5, 7, 10, 12

*Newman v. Krintzman*, 723 F.3d 308 (1st Cir. 2013) .................................................................... 6

*Niedner v. Ortho-McNeil Pharm., Inc.*, 90 Mass. App. Ct. 306 (2016) .................................... 2, 5

*Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80 (2004)................................................ 18

*Robinson v. Brigham & Women's Faulkner Hosp., Inc.*,
    100 Mass. App. Ct. 1109 (2021).............................................................................................. 10

*Rudenauer v. Zafiropoulos*, 445 Mass. 353 (2005) ..................................................... 6, 10, 12, 14

*Salem Orthopedic Surgeons, Inc. v. Quinn*, 377 Mass. 514 (1979)............................................... 9

*SEC v. Tambone*, 597 F.3d 436 (1st Cir. 2010) ............................................................................. 4

*Shepard's Pharm., Inc. v. Stop & Shop Cos., Inc.*,
    37 Mass. App. Ct. 516 (1994)................................................................................................. 19

*State Farm Fire & Cas. Co. v. Wangs All. Corp.*, No. 21-CV-10389-AK,
  2022 WL 464232 (D. Mass. Feb. 15, 2022) ................................................ 5

*Sullivan v. Iantosca*, 409 Mass. 796 (1991) ........................................... 8, 14, 15

*Tindol v. Boston Hous. Auth.*, 396 Mass. 515, 487 N.E.2d 488 (1986) ........... 13, 14, 17

*Vacca v. Brigham & Women's Hosp., Inc.*, 98 Mass. App. Ct. 463 (2020) ............... 8, 19

## **Statutes**

G.L. c. 231, § 60B ................................................................................... 6

G.L. c. 260, § 12 ....................................................................................... 1

G.L. c. 260, § 4 .............................................................................. 1, 6, 10

G.L. c. 93A ................................................................................... *passim*

## **Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 3

Mass. S.J.C Rule 1:03 .............................................................................. 20

## **Other Authorities**

Commonwealth of Massachusetts, BORIM, Quality and Patient Safety
  Division, Advisory on Retained Foreign Objects (available at
  https://www.mass.gov/doc/august-2010-retained-foreign-objects-advisory/download).......... 12

## I.      INTRODUCTION

This action concerns medical treatment that defendant Merle Berger ("Dr. Berger") allegedly provided to plaintiff Sarah Depoian ("Ms. Depoian") more than forty years ago. In a transparent and futile attempt to plead around the strict requirements of the applicable seven-year statute of repose, G.L. c. 260, § 4 (the "Statute of Repose"), Ms. Depoian's attorneys have artfully crafted the Complaint to purposefully omit a claim for medical malpractice and instead rely only on a fraudulent concealment claim. Specifically, Ms. Depoian alleges that after Dr. Berger committed medical malpractice in 1980, he then purposefully concealed the basis of her malpractice claim in violation of his fiduciary duty to disclose known instances of malpractice.

As pled, Ms. Depoian asks this Court to apply an equitable exception to the Statute of Repose that does not exist. The Supreme Judicial Court has already addressed this issue and has repeatedly confirmed that statutes of repose "eliminate[] a plaintiff's cause of action even in cases of fraudulent concealment." *Bridgwood v. A.J. Wood Constr., Inc.*, 480 Mass. 349, 354 (2018). In fact, in *Joslyn v. Chang*, 445 Mass. 344, 350 (2005), the Supreme Judicial Court held that the Statute of Repose cannot be extended even when a doctor fraudulently conceals a patient's malpractice claim: "Statutory rules of construction also support our conclusion that the statute of repose is not subject to either equitable estoppel or tolling pursuant to G.L. c. 260, § 12 (relating to fraudulent concealment). . . . [T]he Legislature allowed only one exception to the statute of repose, that pertaining to actions arising from a foreign object left in the body. *See* G.L. c. 260, § 4. No exclusion or tolling provision expressly applying to the statute of repose was enacted for cases involving fraudulent concealment."

The Statute of Repose bars all three claims asserted by Ms. Depoian – fraudulent concealment (Count I), intentional misrepresentation/fraud (Count II), and violation of G.L. c.

93A (Count III). In addition, Counts I and II, which both allege fraudulent concealment and are mirror images of each other, must be dismissed because "Massachusetts does not recognize an independent claim for fraudulent concealment." *Niedner v. Ortho-McNeil Pharm., Inc.*, 90 Mass. App. Ct. 306, 313 n.7 (2016). Count III also fails for the additional reason that Ms. Depoian does not allege that Dr. Berger acted in an entrepreneurial or business capacity, and therefore his alleged conduct is outside the purview of c. 93A.

Alternatively, to the extent the Court determines there is an open question of law as to whether the Statute of Repose bars Ms. Depoian's claims, Dr. Berger requests that the Court certify the question for the Supreme Judicial Court to decide. But to be clear, it is not an open question and the Statute of Repose bars Ms. Depoian's action.

## II.    FACTUAL BACKGROUND[1]

Ms. Depoian alleges that she and her husband saw Dr. Berger for fertility treatment in 1980. Complaint ("Compl.") ¶11. Because Ms. Depoian's husband's sperm could not be used for conceiving, she alleges that Dr. Berger advised that he could perform intrauterine insemination (IUI) to achieve pregnancy. *Id.*, ¶13. IUI is a procedure that places sperm directly into the uterus using a catheter. *Id*. Dr. Berger allegedly told Ms. Depoian "that he would insert the sperm of a medical resident who resembled her husband, who did not know her, and whom she did not know." *Id*., ¶14. Ms. Depoian alleges that she consented to this described procedure. *Id*., ¶15.

Dr. Berger allegedly performed the insemination in or about April 1980. *Id*. ¶31. He allegedly "told Ms. Depoian that he had successfully performed the insemination that he and she had previously discussed." *Id*. Ms. Depoian's daughter was born in January 1981. *Id*., ¶16. Ms. Depoian does not allege that her daughter is unhealthy or has a genetic disease or disorder.

---

[1] Ms. Depoian's allegations are taken as true only for purposes of this motion to dismiss.

Ms. Depoian alleges she "returned to Dr. Berger in early 1983 for assistance with having another child. Ms. Depoian asked Dr. Berger if he could use the same donor for her second child that he had used for her first child." *Id*., ¶35. He allegedly "explained he could not do so because he did not know the identity of the donor that was used for her first pregnancy." *Id*.

In 2023 – some forty years later – Ms. Depoian's daughter allegedly submitted DNA samples to Ancestry.com and 23&me.com. *Id*., ¶¶19-20. Based on the results of the tests, Ms. Depoian believes that Dr. Berger is her daughter's biological father. *Id*., ¶21.

Ms. Depoian alleges that, as her doctor, "Dr. Berger owed [her] a fiduciary obligation to tell her the truth and not to act toward her in any fraudulent or deceitful way," which "required disclosure of known material facts, such as the true source of the sperm he had inserted into her body." *Id*., ¶¶36-37. She alleges that she "would not have consented to the insemination if Dr. Berger would have told her that he was going to insert his own sperm into her body," and that "Dr. Berger's post-insemination statements and/or concealment were designed to hide from [her] his precise misconduct, so that Ms. Depoian would not have the knowledge she needed to sue Dr. Berger[.]" *Id*., ¶¶25, 39.

But Ms. Depoian has not asserted a medical malpractice claim. She instead asserts claims for fraudulent concealment (Count I), intentional misrepresentation/fraud (Count II), and violation of G.L. c. 93A (Count III).

### III.  <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must "set forth factual allegations . . . to sustain recovery under some

actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quotations and citation omitted). "If the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' the complaint is vulnerable to a motion to dismiss." *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

## IV.   ARGUMENT

### i.   Counts I and II Must be Dismissed Because Fraudulent Concealment is not an Independent Cause of Action.

"Courts must look beyond the label given to the putative cause of action and instead undertake an independent fact-intensive inquiry into the substance of each claim raised[.]" *Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336, 356 (D. Mass. 2011) (quotations and citations omitted). Although Count II is labeled as intentional misrepresentation/fraud, it merely recasts Ms. Depoian's fraudulent concealment claim (Count I). In fact, both claims are based on the exact same allegations that "Dr. Berger's post-insemination statements and/or concealment were designed to hide from Ms. Depoian his precise misconduct, so that Ms. Depoian would not have the knowledge she needed to sue Dr. Berger for his egregious violation of her body." Compl., ¶¶39, 49. Her "claim for fraudulent concealment is no different from [her] claim for intentional misrepresentation and fraud, which alleges that [Dr. Berger] made false representations of material facts (related to the circumstances surrounding the [insemination]), with knowledge of their falsity, for the purpose of inducing [Ms. Depoian] to act thereon, and that [she] relied upon the representations as true and acted upon them to [her] detriment . . . ." *Chace v. Curran*, 71 Mass. App. Ct. 258, 263 (2008).[2]

---

[2] Ms. Depoian has carefully tailored her claims to mirror those asserted by the plaintiffs in *Chace*, discussed supra.

However, it is well settled that "[w]ith respect to fraud in the concealment, that doctrine does not provide an independent cause of action. Rather, it tolls the statute of limitations if 'the wrongdoer . . . concealed the existence of a cause of action through some affirmative act done with intent to deceive[.]'" *Harry v. Countrywide Home Loans Inc.*, 219 F. Supp. 3d 228, 235 (D. Mass. 2016), aff'd, 902 F.3d 16 (1st Cir. 2018) (quoting *Abdallah v. Bain Capital LLC*, 752 F.3d 114, 119–20 (1st Cir. 2014)). *See also Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189 n.4 (1st Cir. 2006) ("Epstein erroneously pled fraudulent concealment as a separate cause of action[.]"); *Ingalls v. Adams Cmty. Bank*, No. CV 19-30006-MGM, 2020 WL 3722317, at *7 (D. Mass. Mar. 25, 2020) ("In Count IV, Plaintiff asserts a claim of 'Fraudulent Concealment.' The doctrine of fraudulent concealment . . . does not provide an independent cause of action."); *Niedner*, 90 Mass. App. Ct. at 313 n.7; *Baldyga v. Town of Dudley*, No. 072319A, 2009 WL 323384, at *2 (Mass. Super. Jan. 13, 2009). Accordingly, Counts I and II must be dismissed.

### ii. <u>All Three Counts are Barred by the Statute of Repose.</u>

"[I]n determining whether the Statute of Repose applies to a claim, the Court is directed to 'read the complaint by its gist, rather than its label.'" *Lennar Ne. Properties, Inc. v. Barton Partners Architects Planners Inc.*, No. 16-CV-12330-ADB, 2021 WL 231295, at *4 (D. Mass. Jan. 22, 2021) (quoting *Kingston Hous. Auth. v. Sandonato & Bogue, Inc.*, 31 Mass. App. Ct. 270, 274 (1991)). Regardless of the labels used, each claim is barred by the Statute of Repose:[3]

> Actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitoria shall be commenced only within three years after the cause of action accrues, ***but in no event shall any such action be commenced more than seven years after occurrence of the act or***

---

[3] "Federal courts sitting in diversity jurisdiction must apply the Massachusetts statute of repose, which is considered substantive rather than procedural." *State Farm Fire & Cas. Co. v. Wangs All. Corp.*, No. 21-CV-10389-AK, 2022 WL 464232, at *2 (D. Mass. Feb. 15, 2022) (citing *Nett ex rel. Nett v. Bellucci*, 269 F.3d 1, 5 (1st Cir. 2001)).

> *omission which is the alleged cause of injury upon which such action is based except where the action is based upon leaving a foreign object in the body*.

G.L. c. 260, § 4 (emphasis added).

"As opposed to a statute of limitations, which 'establishes a time limit for suing in a civil case . . . based on the date when the claim accrued (as when the injury occurred or was discovered),' a statute of repose bars any *suit* filed 'after a specified time since the defendant acted . . .,' *regardless of whether the claim has accrued*." *Newman v. Krintzman*, 723 F.3d 308, 313 n.3 (1st Cir. 2013) (quoting Black's Law Dictionary 1546 (9th ed. 2009) (brackets omitted and emphasis added). "The injury need not have occurred, much less have been discovered." *Klein v. Catalano*, 386 Mass. 701, 702 (1982). "[E]ven were there negligence, the plaintiff no longer has a viable cause of action for any act or omission that occurred seven years before she filed suit." *Rudenauer v. Zafiropoulos*, 445 Mass. 353, 357 (2005) (footnote omitted).

## A.  History and Purpose of the Statute of Repose.

The Massachusetts Legislature adopted the Statute of Repose in 1986 as part of the Medical Malpractice Act, G.L. c. 231, § 60B *et seq.*, "in response to the SJC's adoption of the discovery rule." *Ashley v. New York State Off. of Child. & Fam. Servs*., 33 F. Supp. 3d 76, 80 (D. Mass. 2014). "A special commission reviewing issues pertaining to medical malpractice insurance, which had been established by the Legislature back in 1975 (St.1975, c. 362, § 12), then recommended that an 'outside limit' be placed on the time in which malpractice actions could be brought, because, under the discovery rule, 'there is no limit on the time period in which such discovery must be made.' Annual Report of the Special Commission Relative to Medical Professional Liability Insurance and the Nature and Consequences of Medical Malpractice, 1987 House Doc. No. 5262, at 9." *Harlfinger v. Martin*, 435 Mass. 38, 42 (2001).

"While the Legislature's immediate focus was on the cost and availability of medical malpractice insurance, . . . limiting the duration of liability is a well recognized public purpose."

*Id*. at 43 n.8 (quotations, citation, and brackets omitted). As the Court explained,

> The purpose of a statute of repose is to give particular types of defendants the benefit of a date certain on which their liability for past conduct will definitively come to an end. "There comes a time when a defendant ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not be called on to resist a claim 'when evidence has been lost, memories have faded, and witnesses have disappeared.'" *Klein v. Catalano*, 386 Mass. 701, 709, 437 N.E.2d 514 (1982), quoting *Rosenberg v. North Bergen*, 61 N.J. 190, 201, 293 A.2d 662 (1972). The Legislature has decided that the uncertainties inherent in statutes of limitation, which run from the unpredictable and theoretically never-ending date on which a cause of action can "accrue," are contrary to the needs of certain professions, including the medical profession. *See Harlfinger v. Martin*, 435 Mass. 38, 41–42, 44, 754 N.E.2d 63 (2001). To serve this purpose, there must be a clear, bright-line method for determining the statute's operation, as only certainty in the measurements provides the certainty that such defendants are to be accorded.

*Nett v. Bellucci,* 437 Mass. 630, 639 (2002) (brackets and footnote omitted). "The problem of defending stale medical malpractice claims is further exacerbated by the fact that the standard of care is itself subject to rapid and dramatic change, fueled by advances in medical science and technology. From a defendant's perspective, demonstrating the standard of care of many years past, and that the defendant's treatment of the plaintiff did not deviate from it, can be very difficult when, by modern standards, the same care would represent a major deviation."

*Harlfinger*, 435 Mass. at 43 n.8. *See also Joslyn*, 445 Mass. at 351 ("The object of a statute of repose . . . is to suppress fraudulent and stale claims from springing up at great distances of time, and surprising the parties, or their representatives, when all the proper vouchers and evidences are lost, or the facts have become obscure, from the lapse of time, or the defective memory, or death, or removal of witnesses.") (quotations and citation omitted).

**B. Regardless of Ms. Depoian's Legal Theories, her Action is Subject to and Barred by the Statute of Repose.**

"A plaintiff may not circumvent this statutory scheme by 'restating a claim, otherwise subject to the medical malpractice act, as another type of claim.' In other words, a judge faced with a claim against a health care provider must look at the substance of the plaintiff's allegations, rather than the label on the cause of action, to determine if the claim is a malpractice claim." *Vacca v. Brigham & Women's Hosp., Inc.*, 98 Mass. App. Ct. 463, 471 (2020) (quoting *Darviris v. Petros*, 442 Mass. 274, 283 (2004)).

The Statute of Repose bars negligent and intentional misrepresentation claims. *See Johnston v. Stein*, 29 Mass. App. Ct. 996, 997 (1990) (Plaintiff "forumulat[ed] her grievance . . . as [a] misrepresentation. . . . Performing surgery without the plaintiff's informed consent is professional misconduct . . . . That is a complaint related to treatment."); *Sullivan v. Iantosca*, 409 Mass. 796, 798-99 (1991) (statutes of repose bar claims of "gross negligence, wanton conduct, or even knowing and intentional wrongdoing"). It "eliminates a plaintiff's cause of action even in cases of fraudulent concealment." *Bridgwood*, 480 Mass. at 354 (2018). It also eliminates c. 93A claims. *See Darviris*, 442 Mass. at 283–84 ("Allowing a plaintiff to restate a claim, otherwise subject to the medical malpractice act, as a violation of G.L. c. 93A, would undermine the careful policy choices articulated by the Legislature. . . . Expanding … the period within which to make such claims [] is contrary to the express intent of the Legislature in enacting St.1986, c. 351."); *Bridgwood*, 480 Mass. at 354 (rejecting argument that "because the relief available under G. L. c. 93A is 'sui generis,' neither wholly tortious nor wholly contractual in nature, the statute of repose does not apply").

"Under Massachusetts law, all 'treatment-related' claims" are subject to the Medical Malpractice Act and Statute of Repose. *McCusker v. United States*, No. 17-CV-11334-DLC,

2023 WL 8627666, at *4 (D. Mass. Dec. 13, 2023) (quotations, citations, and brackets omitted). *See also Darviris*, 442 Mass. at 282 (Statute of Repose is part of Medical Malpractice Act); *Chace*, 71 Mass. App. Ct. at 262 ("so long as the 'core' of the plaintiffs' amended complaint alleges improper medical treatment by the defendants, it is subject to all provisions of the medical malpractice act, including applicable statutes of repose") (footnote omitted). "In determining whether a claim is 'treatment-related,' courts look to the underlying factual allegations, not the legal theory advanced." *McCusker*, supra (quotations and citations omitted).

Ms. Depoian's allegation that Dr. Berger used his own sperm during an insemination procedure without informing her and without her consent, Compl., ¶25, is treatment-related. *See Johnston*, supra ("assumptions falsely communicated to" patient were treatment-related); *Lubanes v. George*, 386 Mass. 320, 324-36 (1982) (intentional misrepresentations made to patient were treatment-related); *Salem Orthopedic Surgeons, Inc. v. Quinn*, 377 Mass. 514, 521-22 (1979) (breach of promise to produce specific medical result is treatment-related); *Bradley v. Sugarbaker*, 809 F. 3d 8, 14 (1st Cir. 2015) ("consented touching for which consent was induced by inadequate information was" treatment-related).

She also alleges that during a subsequent office visit to discuss assistance with having a second child (which is treatment-related), Dr. Berger failed to tell her that he used his own sperm for her first child. *Id*., ¶¶35, 47. She alleges Dr. Berger, as her doctor, "owed [her] a fiduciary duty to tell her the truth and not to act toward her in any fraudulent or deceitful way. He owed [her] a fiduciary duty . . . that required disclosure of known material facts, such as the true source of the sperm he had inserted into her body." *Id*., ¶¶36-37. It is axiomatic that a breach of a fiduciary duty based on a doctor-patient relationship for failure to disclose during a medical appointment is treatment-related. *See Fowles v. Lingos*, 30 Mass. App. Ct. 435, 441 (1991) ("For

some purposes (e.g., treatment) the doctor-patient relationship is a fiduciary one[.]"); *Bourassa v. LaFortune*, 711 F. Supp. 43, 47 (D. Mass. 1989) ("if a doctor knows or believes that a cause of action exists and fails to disclose it to the plaintiff, he will have breached his fiduciary relationship and violated his professional duty"); *Robinson v. Brigham & Women's Faulkner Hosp., Inc.*, 100 Mass. App. Ct. 1109 (2021) (unpublished opinion) (medical malpractice claim based on breach of fiduciary duty governed by G.L. c. 260, § 4).

"A repose period begins to run from some 'definitely established event,' abolishing a plaintiff's cause of action thereafter, even if the injury does not occur, or is not discovered, until after the statute's time limit has expired." *Rudenauer*, 445 Mass. at 358. "The only way to satisfy the absolute time limit of a statute of repose is to commence the action prior to the expiration of that time limit." *Nett*, 437 Mass. at 635 (quotations and citation omitted). Here, the "definitely established event" was the alleged insemination procedure in or about April 1980. Therefore, this action must be dismissed because Ms. Depoian did not file before April 1987.

Dr. Berger's alleged post-insemination communications with Ms. Depoian are not "definitely established events" that extend the seven-year "outside limit" for Ms. Depoian to sue. *Harlfinger*, 435 Mass. at 42. Rather, they were just part of Dr. Berger's alleged continuing treatment. *See Moran v. Benson*, 100 Mass. App. Ct. 744, rev. den., 489 Mass. 1108 (2022) ("Moran claims that the judge erred in determining that the statute of repose required the dismissal of her complaint because she alleged additional negligent acts or omissions (after the initial 2011 failure to disclose the diagnosis of multiple sclerosis) that fell within the seven-year period and were not extinguished by the statute. In particular, Moran seeks to characterize each encounter with the defendants, in which they did not advise and treat her for multiple sclerosis,

as a separate negligent act or omission, including the defendants' continued prescription of migraine medication up to July of 2013. We disagree.").

Furthermore, the alleged pre- and post-insemination misrepresentations were the same. The Statute of Repose bars actions in these circumstances "where the alleged acts of fraudulent concealment [are] the same acts that gave rise to the underlying claim." *Joslyn*, 445 Mass. at 351. *See also Sullivan,* 409 Mass. at 798 n.3*; Hayden v. McKeon*, 103 Mass. App. Ct. 1106, at *2 (2023) (unpublished decision) ("claims for concealment . . . are [not] different than claims for fraudulent concealment and intentional misrepresentation based on the same concealment").

Even if Dr. Berger's alleged post-insemination communications with Ms. Depoian can be considered "definitely established events," the last communication was at her final visit with Dr. Berger in early 1983. Compl., ¶35. Therefore, the latest possible time Ms. Depoian could have filed this action was in early 1990. *See Gelormini v. Pignatiello*, No. CA934129, 1994 WL 902947, at *5 n.2 (Mass. Super. Dec. 9, 1994) (fiduciary relationship ends when patient stops treating with doctor).

### C.  The "Foreign Object" Exception Does not Apply.

Ms. Depoian cannot rely on the sole statutory exception to the Statute of Repose, commonly referred to as the "foreign object" or "foreign body" exception.[4] <u>*First*</u>, the alleged sperm at issue was not retained or left in Ms. Depoian's body for the past four decades. Nor does

---

[4] "Problems of proof, and changes in the standard of care, do not plague foreign object cases, no matter how long ago the alleged malpractice occurred. The later discovery of the foreign object is, for all practical purposes, proof of some earlier negligence on the part of a health care provider. The Legislature could rationally decide that the risks of stale claims involving that specific type of medical malpractice were so low that they could, as a group, safely be exempted from the seven-year statute of repose. By comparison, the passage of time makes other types of malpractice claims difficult to defend . . ., such that an absolute deadline measured from the actual date of the act of malpractice may be viewed as appropriate." *Ashley*, 33 F. Supp. 3d at 81.

she allege that it was. _Second_, the term "retained foreign body" has a plain language and a well-defined meaning in medicine. It refers to a foreign object, often a surgical sponge or surgical instrument, utilized during surgery which is not supposed to be left inside the body, and may cause injury if inadvertently left inside the body. The sperm at issue is not a "retained foreign body" recognized by the medical community.[5]

     _Third_, this lone statutory exception does not apply to objects allegedly placed and left _intentionally_ inside a patient's body. In _Ashley_, 33 F.Supp.3d at 81, the Court held that because plaintiff had pins intentionally placed in his body for a specific medical purpose, the pins could not be considered "foreign objects" under the Statute of Repose. The exception "contemplates a later discovery of an unintentionally left item." _Id_.

### D.  The Statute of Repose Period Cannot be Tolled or Extended for any Reason.

     "[S]tatutes of repose may not be 'tolled' for any reason, as 'tolling' would deprive the defendant of the certainty of the repose deadline and thereby defeat the purpose of a statute of repose." _Nett_, 437 Mass. at 635 (citations omitted). "[S]tatutes of repose may impose great hardship on a plaintiff who has suffered injury and has a meritorious claim but who does not suffer or discover the injury within the period permitted for initiation of suit," but courts "cannot introduce an equitable exception when the Legislature has fashioned an ironclad rule." _Joslyn_, 445 Mass. at 351 (quotations and citation omitted). "The fact that the Legislature inserted one exception into the statute of repose, for 'the leaving of a foreign object in the body,' demonstrates that it did not intend other exceptions[.]" _Rudenauer_, 445 Mass. at 359.

---

[5] The Massachusetts Board of Registration in Medicine defines an RFO as "the occurrence of unintended retention of objects at any point after the surgery ends. Examples include a retained sponge, cannula tip, or guide wire." Commonwealth of Massachusetts, BORIM, Quality and Patient Safety Division, Advisory on Retained Foreign Objects (available at https://www.mass.gov/doc/august-2010-retained-foreign-objects-advisory/download).

The Supreme Judicial Court has already held that a patient cannot plead around the Statute of Repose by alleging that the patient's doctor fraudulently concealed the patient's cause of action, which is precisely what Ms. Depoian alleges here. In *Joslyn*, 445 Mass. at 344, "the heart and coronary artery of the plaintiffs' infant daughter [Sentree] were unexpectedly punctured during surgery by the defendant doctors." The plaintiffs filed a lawsuit ten years later and alleged "that their delay was induced by misleading assertions and omissions of the defendants. The plaintiffs argue[d] that they should be relieved of application of the [S]tatute of [R]epose . . . because the defendants fraudulently concealed their cause of action." *Id*. at 344-45.[6] The Court rejected plaintiffs' argument because "the relief the plaintiffs [sought was] contrary to the purpose and absolute language of the [S]tatute of [R]epose." *Id*. at 345. The Court held that,

> ***Statutory rules of construction also support our conclusion that the statute of repose is not subject to either equitable estoppel or tolling pursuant to G.L. c. 260, § 12 (relating to fraudulent concealment)***. At the time the statute of repose was enacted, we had already decided the case of *Tindol v. Boston Hous. Auth.,* 396 Mass. 515, 518–519, 487 N.E.2d 488 (1986), in which we interpreted G.L. c. 260, § 2B, a statute of repose for certain architectural and construction workers that contains language similar to that later added to § 4. In the *Tindol* case, we reaffirmed the sharp distinction between statutes of limitations and statutes of repose, holding that the latter were "of an entirely different legal genre," the effect of which was "to abolish the remedy and not merely to bar the action." *Id.* at 518, 519, 487 N.E.2d 488.

> In addition, the Legislature allowed only one exception to the statute of repose, that pertaining to actions arising from a foreign object left in the body. See G.L. c. 260, § 4. ***No exclusion or tolling provision expressly applying to the statute of repose was enacted for cases involving fraudulent concealment***.

---

[6] Specifically, one of the defendants "told the plaintiffs that their daughter had died because her heart was 'too weak to withstand the procedure.' He did not mention the puncture and significant blood loss. At the time, no one from Children's Hospital told the plaintiffs that an event had occurred that caused a puncture or laceration of Sentree's heart, or that such an event resulted in an excessive loss of blood. Sentree's death certificate, which the plaintiffs reviewed, was signed by [the other defendant doctor] and noted the manner of death as 'natural.' It attributed her death to the ailments for which she was being treated." *Joslyn*, 445 Mass. 345-46.

*Joslyn*, 445 Mass. at 350 (emphasis added).[7]

The Supreme Judicial Court's decision in *Joslyn* is binding precedent requiring this Court

to dismiss Ms. Depoian's action. The relief she seeks from Dr. Berger is barred by and contrary

to the purpose of the Statute of Repose. In fact, "[i]t is unnecessary to determine whether

misrepresentation of any kind took place or whether they amounted to fraudulent concealment."

*Id*. at 345. This Court need only look at the date of the alleged insemination (April 1980) to

determine that this action is barred by the seven-year Statute of Repose.

### E.   *Chace v. Curran* is Inapposite.

Ms. Depoian is expected to rely on *Chace*, 71 Mass. App. Ct. at 261, which concerned

claims "arising out of the defendants' alleged delivery of substandard medical care in

resuscitating Andrew" who lacked oxygen immediately after birth. The plaintiffs sued the

defendants almost 9 years after Andrew was born, and in an amended complaint asserted claims

for intentional misrepresentation and fraudulent concealment alleging that, only after Andrew

was born, the defendants made intentional misrepresentations and omissions in the medical

records to cover up their known negligence. *Id*. at 259.[8] The Appeals Court held that the

plaintiffs' claims for fraudulent concealment and intentional misrepresentation were not barred

by the Statute of Repose because "the plaintiffs [did] not claim to have made a treatment-related

---

[7] The Supreme Judicial Court has consistently and repeatedly rejected other equitable attempts by plaintiffs to get around statutes of repose. *See Rudenauer*, 445 Mass. at 358 (Statute of Repose not tolled by continuing medical treatment); *Sullivan*, 409 Mass. at 798-799 (statute of repose not tolled by knowing and intentional wrongdoing); *Tindol*, 396 Mass. at 517-518 (statute of repose not tolled by minority or mental illness).

[8] "Specifically, they assert[ed] that neither provider noted a failed initial attempt to insert a breathing tube into Andrew or that he was left without oxygen for several minutes before a second doctor took over the resuscitation and got the oxygen flowing properly. Instead, the plaintiffs claim[ed] the record was written in a manner that would lead them to conclude, incorrectly, that the efforts to revive Andrew proceeded without incident or without resulting personal injury to him." *Chace*, 71 Mass. App. Ct. at 261.

decision based upon misinformation propounded by the defendants." *Id*. at 267. The Appeals Court drew a clear distinction between the defendants' conduct during treatment and the defendants' separate and distinct post-treatment attempt to conceal their negligence. *Id*. at 265.

There are multiple problems with Ms. Depoian's reliance on *Chace*. <u>First</u>, it was wrongly decided. It conflicts with binding Supreme Judicial Court precedent set forth in *Joslyn, Bridgwood*, and *Sullivan* holding that the seven-year period to bring an action against a doctor is absolute. Although the plaintiffs in those cases did not assert fraudulent concealment claims, a plaintiff cannot circumvent the Statute of Repose by merely adding such a claim. Form does not prevail over substance. "What is at stake is a malpractice claim and we look to that substance, not the legal theory adopted." *Johnston*, 29 Mass. App. Ct. at 997. Indeed, adding a fraudulent concealment claim accomplishes nothing because "[i]t is unnecessary to determine whether misrepresentation of any kind took place or whether they amounted to fraudulent concealment." *Joslyn*, 445 Mass. at 345.

<u>Second</u>, the Appeals Court assumed incorrectly that the plaintiffs could assert an independent cause of action for fraudulent concealment. But as discussed in Section IV(i), infra, fraudulent concealment is not a recognized or viable claim.

<u>Third</u>, even if *Chace* was properly decided, and it was not, the Appeals Court held that the plaintiffs' claims were not barred by the Statute of Repose because the defendants' fraud was limited to post-treatment misrepresentations. Both the plaintiffs[9] and the Court emphasized that

_____

[9] In their appellate brief, the plaintiffs argued that "the conduct giving rise to the amended claims occurred **after** the defendants had concluded their medical care of Andrew. Following their resuscitation efforts, the defendants authored medical notes in which they knowingly entered false and misleading information. ***There is absolutely no allegation in the plaintiff's Amended Complaint that the defendants engaged in such wrongful conduct while rendering medical care to Andrew. Rather, the intentional acts committed by the defendants arose***

the post-treatment misrepresentations were separate and distinct from the underlying treatment. *See id.* ("[T]he defendants … allegedly misrepresented and failed to disclose certain material facts, not out of a concern to avoid error or mistake in providing medical treatment to Andrew, but for the **sole purpose** of hiding their errors from him and his mother.") (emphasis added); *Id.* at 266 ("Nor does the amended complaint contain any allegation of causation between the personal injuries Andrew incurred and the alleged inaccuracies in his medical record."). The Appeals Court also distinguished *Johnston v. Stein* where claims based on pre-treatment misrepresentations were claims for malpractice and subject to the Statute of Repose:

> Similarly, the case of *Johnston v. Stein* . . . is inapposite. The plaintiff there claimed that her physician's misrepresentations caused her to undergo unnecessary surgery, which was performed in a negligent manner and resulted in personal injury. We concluded there that the complaint, which was cast in terms of the defendant having 'misrepresented' the plaintiff's condition, was actually one of medical malpractice based on an alleged breach of professional duty for failure to obtain informed consent from the patient prior to performing surgery. *Id.* at 996–997, 562 N.E.2d 1365. ***As previously stated, the plaintiffs here do not claim to have made a treatment-related decision based upon misinformation propounded by the defendants***.

*Chace*, 71 Mass. App. Ct. at 266-67 (emphasis added and footnote omitted). But that is precisely what Ms. Depoian alleges. *See* Compl., ¶ 25 ("Ms. Depoian would not have consented to the insemination if Dr. Berger would have told her that he was going to insert his own sperm into her body."). Even if *Chace* was correctly decided, and it was not, it is distinguishable.

Furthermore, as discussed above, the Statute of Repose still bars relief "where the alleged acts of fraudulent concealment [are] the same acts that gave rise to the underlying claim." *Joslyn*, 445 Mass. at 351. The Appeals Court recently confirmed that the Statute of Repose bars a claim for post-treatment fraudulent concealment based on the same pre-treatment misrepresentations.

---

***subsequent to and separate from the medical care provided***." Brief of Plaintiffs/Appellees, 2007 WL 696797 (Mass. App. Ct.), *12-13 (emphasis added).

In *Hayden*, 103 Mass. App. Ct. 1106, at *2, where the defendant performed an unauthorized surgery because of a failure to disclose and then fraudulently concealed same after the surgery, the Appeals Court affirmed the dismissal of the plaintiff's fraudulent concealment claim because "nothing in *Chace* suggests that claims for concealment . . . are different than claims for fraudulent concealment and intentional misrepresentation based on the same concealment."

*Fourth*, the purpose and effect of the Statute of Repose is to "'to abolish the remedy and not merely to bar the action.'" *Joslyn*, 445 Mass. at 350 (quoting *Tindol,* 396 Mass. at 518). Ms. Depoian's artful pleading of adding a non-viable fraudulent concealment claim is simply an attempt to pursue a barred remedy for medical malpractice. She admits as much. *See* Compl., ¶¶ 40-42 ("Ms. Depoian relied on Dr. Berger's misrepresentations . . . and thus did not sue Dr. Berger in 1980 (or any time until now) for any then-available legal claims, including but not limited to medical malpractice, battery, negligence, breach of fiduciary duty, and a violation of Massachusetts' consumer protection statute. . . . Ms. Depoian seeks damages for an amount she could have recovered had she not lost the opportunity to file a timely action."); *Id*., ¶¶ 50-52.

*Fifth*, if the Court were to accept Ms. Depoian's argument, a patient, regardless of the type of medical care received, could circumvent the Statute of Repose by simply adding a fraudulent concealment claim alleging that the doctor knew he or she was negligent but failed to inform the patient because "Massachusetts imposes a fiduciary duty on doctors to disclose known possible causes of action to patients." *Heinrich ex rel. Heinrich v. Sweet*, 62 F. Supp. 2d 282, 304 (D. Mass. 1999). Doctors will face the never-ending potential of being sued for treatment they rendered decades earlier. The Statute of Repose was enacted to prevent this.

The Legislature weighed the fairness to patients and doctors when it enacted the Statute of Repose. It is up to the Legislature, not this Court, to add another exception to the statute:

> The duty of the court is to adhere to the very terms of the statute, and not, upon imaginary equitable considerations, to escape from the positive declarations of the text. No exceptions ought to be made, unless they are found therein; and if there are any inconveniences or hardships growing out of such a construction, it is for the legislature, which is fully competent for that purpose, and not for the court, to apply the proper remedy.

*Joslyn*, 445 Mass. at 352 (quotations, citation, and brackets omitted)*.* Accordingly, Counts I-III must be dismissed.

### iii.    <u>Additional Reasons to Dismiss Count III.</u>

Count III, which asserts a claim for violation of G.L. c. 93A, must be dismissed for the reasons discussed above. It must be dismissed also because it is derivative of the non-viable fraudulent concealment and intentional misrepresentation claims. *See Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 85-86 (2004); *Macoviak v. Chase Home Mortgage Corp.*, 40 Mass. App. Ct. 755, 760 (1996), rev. denied, 423 Mass. 1109 (1996). In addition, while c. 93A may apply to the "entrepreneurial or business aspect of [a] medical practice," including "advertising and billing," *Darviris*, 442 Mass. at 279-80, there are no such allegations here. *See Little v. Rosenthal*, 376 Mass. 573, 577 (1978) ("[W]e distinguish those c. 93A actions which allege unfair trade practices in medical treatment from those which merely raise such questions as fraudulent or deceptive billing practices by a health care provider.").

Ms. Depoian's allegations concern Dr. Berger's alleged medical treatment. The only allegations remotely touching upon the business aspect of Dr. Berger's medical practice is that, like any healthcare provider, he "was in the commercial business of treating fertility conditions for compensation," and that "Ms. Depoian and her husband paid Dr. Berger a significant amount of money for the fertility treatment he provided to her." Compl., ¶¶ 17-18. Ms. Depoian's conclusory allegation that "Dr. Berger's unfair and deceptive conduct was knowingly committed

18

in furtherance of his own commercial, financial and reputational benefit at the expense of Ms. Depoian," Compl., ¶62, is insufficient to make out a c. 93A claim.[10]

She alleges nothing whatsoever about fraudulent or deceptive advertising or billing. And there is "no authority for the proposition that a health care provider loses the protection of the medical malpractice statutory regime if it takes financial considerations into account when making treatment decisions." *Vacca*, 98 Mass. App. Ct. at 472 n.6. *See also Darke v. Est. of Isner*, No. 022194E, 2005 WL 3729113, at *9 (Mass. Super. Nov. 22, 2005) ("[T]he clinical study in which Mr. Darke agreed to participate appears to have been a means to a lucrative end for Dr. Isner. Nevertheless, there is nothing in the record to distinguish the factual underpinnings of Mrs[.] Darke's medical malpractice claim from those that form the basis of her c. 93A claim. If proved, such facts would not concern any entrepreneurial or business aspect of the clinical trial or the gene therapy treatment as contemplated by the Supreme Judicial Court in *Daviris*[.]").

"Allowing [Ms. Depoian] to restate a claim, otherwise subject to the medical malpractice act, as a violation of G.L. c. 93A, would undermine the careful policy choices articulated by the Legislature." *Darviris*, 442 Mass. at 279. Accordingly, the c. 93A claim must be dismissed.

### iv.   Alternatively, the Court Should Certify the Operative Question of Law to the Supreme Judicial Court.

To be clear, the Statute of Repose bars Ms. Depoian's action. But to the extent the Court determines it is an unresolved question of law as to whether a patient can plead around the Statute of Repose by merely adding claims for fraudulent concealment and/or c. 93A, there should be no delay in having the Supreme Judicial Court answer this dispositive question.

---

[10] "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a c. 93A violation is a question of law." *Shepard's Pharm., Inc. v. Stop & Shop Cos., Inc.*, 37 Mass. App. Ct. 516, 520 (1994) (quotations and citation omitted).

"A federal court may certify a question of state law to the SJC where it finds no controlling precedent and where the question may be determinative of the pending cause of action." *Barr v. Galvin*, 793 F. Supp. 2d 463, 464 (D. Mass. 2011) (citing Mass. S.J.C.R. 1:03).[11] This Circuit has "interpreted the SJC's requirement that there be 'no controlling precedent' to prevent certification in cases when the course the state court would take is reasonably clear. The course that the state court would take is not reasonably clear when a case presents a close and difficult legal issue." *Easthampton Sav. Bank v. City of Springfield*, 736 F.3d 46, 51 (1st Cir. 2013) (quotations, citations, and brackets omitted). Courts "consider additional factors— including the dollar amounts involved, the likely effects of a decision on future cases, and federalism interests—in deciding whether to certify questions to the SJC." *Id*. at 52.

Here, the consequences of the answer to this question of law weighs in favor of certifying the question because it will impact future medical malpractice lawsuits against doctors and other healthcare providers in Massachusetts. This legal issue affects all medical malpractice cases concerning all different types of treatment and care, not just those alleged by Ms. Depoian. It will affect all current and former medical providers, including those that have long since retired.

## V.  CONCLUSION

Dr. Berger respectfully requests the Court to dismiss the Complaint with prejudice or, in the alternative, certify the operative question of law to the Supreme Judicial Court.

---

[11] Mass. S.J.C.R. 1:03(1-2) provides: "This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court. This rule may be invoked by an order of any of the courts referred to in Section 1 upon that court's own motion or upon the motion of any party to the cause."

Respectfully submitted,

MERLE BERGER,

By his attorneys,

*/s/ Ian Pinta*
Ian J. Pinta (BBO # 667812)
Gregory R. Browne (BBO # 708988)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
ipinta@toddweld.com
gbrowne@toddweld.com

Dated:  February 12, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 12, 2024.

*/s/ Ian Pinta*
Ian J. Pinta

21