# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

SARAH DEPOIAN,

                Plaintiff,

v.

MERLE BERGER,

                Defendant.

**Case No.: 1:23-cv-13063-RGS**

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Plaintiff Sarah Depoian respectfully submits her opposition to Defendant Merle Berger's Motion to Dismiss and requests this Court deny Defendant's motion.

Plaintiff has sufficiently plead her causes of action in fraud and a violation of Massachusetts' consumer-protection statute. Defendant's primary reliance upon a medical-malpractice statute of repose is mistaken because Defendant's fraud occurred after the statute of repose was enacted, and binding case law holds the statute of repose operates only prospectively. Moreover, even if the statute of repose were to apply retroactively (which it does not), case law holds that it does not apply to post-treatment fraudulent statements, such as those alleged in this lawsuit. In further support, Plaintiff states as follows:

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS……………………………………………………………………i

TABLE OF AUTHORITIES……………………………………………………...…ii-iii

    I.     INTRODUCTION………………………………………………………...1

    II.    FACTUAL BACKGROUND………………………………………………..1

    III.   LEGAL STANDARD…………………………………………………….…2

    IV.   ARGUMENT……………………………………………………...............3

        A.  The Statute of Repose Does Not Bar Ms. Depoian's Claims…………………3

          1.  The Medical-Malpractice Statute of Repose Does Not
              Apply Retroactively to Dr. Berger's Wrongful Conduct…………………3

          2.  The Appeals Court of Massachusetts Correctly Has Held
              That the Statute of Repose Does Not Apply to a Doctor's
              Post-Treatment Fraudulent Statements That Were Uttered
              to Shield the Doctor From Future Liability………………………………6

              a.  *Chace v. Curran*…………………………………………………6

              b.  *Chace* compels the denial of Dr. Berger's motion to dismiss………..8

                 i.    *Chace* was decided correctly…………………………8

                 ii.   Dr. Berger's misconduct mirrors the actions
                       at issue in *Chace*………………………………………..12

        B.  Plaintiff Alleged Fraudulent Concealment as an Anticipated
           Response to a Statute of Limitations Defense and Sufficiently
           Pled a Count for Fraud/Intentional Misrepresentation (Count II)…………..13

        C.  Plaintiff Sufficiently Pled Count III – Violation of Chapter 93A……………14

        D.  Certification is Not Warranted…………………………………………………16

    V.    REQUEST FOR ORAL ARGUMENT……………………………………18

    VI.   CONCLUSION……………………………………………………………18

# TABLE OF AUTHORITIES

## CASES

*AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
928 F. 3d 110 (1st Cir. 2019)……………………………………...…………….……………14

*Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 55 (1st Cir. 2008)…………8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………………………2

*Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835 (2017) .................16

*Berner v. Delahanty*, 129 F.3d 20 (1st Cir. 1997)………………………………………..………2

*Bingham v. Supervalu Inc.*, 2015 U.S.Dist.LEXIS 42925, *24 (D. Mass. March 25, 2015)……17

*Cf. Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54 (1987)…………………...…………9

*Chace v. Curran*, 71 Mass. App. Ct. 258 (2008)…………………………………………*passim*

*Demoulas v. Demoulas Super Mkts.*, 424 Mass. 50 (1997)…………………………….……..14

*Estate of Mason*, 493 Mass. at 148 (2023)………………………………..……………………4

*First Fed. Sav. & Loan Ass'n of Galion, Ohio v. Napoleon*, 428 Mass. 37 (1998)………..…...3, 4

*Hayden v. McKeon*, 2023 Mass.App.Unpub.LEXIS 426 (Aug. 28, 2023)…………………….11

*Joslyn v. Chang*, 445 Mass. 344 (2005)……………………………………..…………….10, 11

*McMahon v. Glixman*, 379 Mass. 60 (1979)……………………………………………………10

*Nett v. Bellucci*, 269 F.3d 1 (1st Cir. 2001)……………………………………………………4

*Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80 (2004)……………..………………14

*Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92 (1st Cir. 2007)………………………………3

*Sarro v. Philip Morris USA, Inc.*, No. 08-10224-MLW, 2010 U.S. Dist. LEXIS 46450,
at *12 (D. Mass. May 12, 2010)……………………………………………………….…...…17

*Sliney v. Previte*, 473 Mass. 283 (2015)……………….……………………………….……4

*Smith v. Mass. Bay Transp. Auth.*, 462 Mass. 370 (2012)……………………….…….…...4, 5

*S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 888 S.E.2d 553 (2023)…………………..5

*Sullivan v. Iantosca*, 409 Mass. 796 (1991)………………………………………………...11

**STATUTES**

G.L. c. 260 § 4………………………………………………...……………………4, 13

G.L. c. 260, § 12……………………………………………………………………13

G.L. c. 93A………………………………………………………………………*passim*

**RULES**

Ala. S.B.159 (2024)………………………………………………………………5

Mass. S.J.C.R. § 1:03………………………………………………………………16

## INTRODUCTION

There is no doubt that Dr. Berger's secretly inserting his own sperm into Ms. Depoian's body is unethical and unconscionable. But that gross act does not form the basis for Ms. Depoian's counts in this lawsuit. Rather, her legal claims focus only on Dr. Berger's post-treatment lies to Ms. Depoian that he in fact had used the sperm of someone other than himself. Those lies—separate from his professional misconduct during his treatment of his patient—lead to liability for fraud and a violation of the State's consumer-protection statute.

Such fraudulent statements find no refuge in Massachusetts' seven-year statute of repose that applies to errors and mistakes by physicians. *First*, the statute of repose, enacted in 1986, applies only prospectively—and not to Dr. Berger's fraudulent conduct, which he perpetrated from 1980 through 1983. *Second*, even if the statute of repose had been enacted to apply retroactively (which it was not), the statute covers medical mistakes and errors, not the post-treatment fraud at issue in this case.

Finally, Ms. Depoian has sufficiently pled her Counts for fraud and consumer-protection violations. The Complaint faithfully alleges and applies their well-established elements.

## I.   FACTUAL BACKGROUND

Ms. Depoian largely agrees with the Factual Background in Dr. Berger's motion to dismiss. (*See* Memo. of Law in Supp. of Mot. to Dismiss ("Motion"), Dkt. No. 11, at 2-3.) Accordingly, she simply highlights here the factual bases for her three legal claims.

Ms. Depoian has *not* alleged claims for medical malpractice or any other claims that are directly tied to Dr. Berger's surreptitiously inserting his own sperm into Ms. Depoian. Instead, she has brought three counts—two sounding in fraud (fraudulent concealment and fraud/intentional misrepresentation) and one for violating the state's consumer-protection statute—that stem from

his repeatedly lying to her after the insemination. As the Appeals Court of Massachusetts has noted, the difference between a malpractice claim and the fraud-related claims, "although subtle, is real." *Chace v. Curran*, 71 Mass. App. Ct. 258, 265 (2008).

On multiple occasions over the three years after the insemination, Dr. Berger expressly lied about the sperm that he previously inserted into Ms. Depoian. For instance, Dr. Berger told her— after the insemination—that he performed the specific insemination they had discussed. (Complaint, Dkt. No. 1, at ¶ 33.) As another example, he told her three years later that he did not know the identity of the sperm donor he previously used. (*Id.* ¶ 35.) Nor did he admit his gross misconduct in any of their many other conversations. (*Id.* ¶ 34.)

Dr. Berger's knowingly false post-insemination statements were designed to conceal his misconduct and to prevent Ms. Depoian from bringing a public lawsuit against him. (*Id.* ¶¶ 26, 39.) His fraud nearly worked: only recently did Ms. Depoian uncover Dr. Berger's fraud. (*Id.* ¶¶ 20-21.) Since then, Dr. Berger has not denied that he uttered the fraudulent post-insemination statements. (*Id.* ¶ 28.)

Finally, all of the allegations supporting the sufficiency of Plaintiff's fraud count also support her ch. 93A claim. Specifically, Dr. Berger perpetrated his fraud in order to further his own commercial benefit, in violation of the Massachusetts consumer-protection statute.

## II.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, merely to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such factual allegations can be "either direct or inferential." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997). Courts must "take all factual allegations [in the Complaint] as true

and . . . draw all reasonable inferences in favor of the plaintiff." *Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 96 (1st Cir. 2007).

## III.   ARGUMENT

### A.  The Statute of Repose Does Not Bar Ms. Depoian's Claims.

Dr. Berger devotes the vast majority of his motion to argue that the medical-malpractice statute of repose bars Ms. Depoian's claims. (Motion at 5-18.) However, case law dictates that the seven-year statute of repose is inapplicable for two reasons.

First, statutes of repose in Massachusetts do not apply retroactively. Whereas the medical-malpractice statute of repose was enacted in 1986, it has no application to Dr. Berger's misconduct (from 1980 through 1983).

Second, a unanimous panel of the Appeals Court of Massachusetts already has held in a materially similar situation that identical claims are not subject to the statute of repose. *Chace*, 71 Mass. App. Ct. at 268. This Court need not second-guess the on-point precedent.

1.   The Medical-Malpractice Statute of Repose Does Not Apply Retroactively to Dr. Berger's Wrongful Conduct.

Binding Supreme Judicial Court ("SJC") precedent holds that statutes of repose apply only prospectively, absent an "unequivocally clear" indication to the contrary. Because there is *nothing* to suggest that the medical-malpractice statute of repose was intended to apply retroactively, let alone with such a clear legislative directive, the statute of repose (enacted in 1986) does not apply to Berger's years-earlier misconduct.

It has long been the law in Massachusetts that statutes regulating substantive rights—as opposed to procedure—apply only prospectively. *See, e.g.*, *First Fed. Sav. & Loan Ass'n of Galion, Ohio v. Napoleon*, 428 Mass. 371, 373 (1998). Moreover, as Defendant concedes,

Massachusetts' statutes of repose are deemed "substantive." *See* Motion at 5 n.3; *see also Matter of Estate of Mason*, 493 Mass. 148, 167 (2023); *Nett v. Bellucci*, 269 F.3d 1, 5 (1st Cir. 2001).

Accordingly, the SJC has held that statutes of repose "presumptively operate[] prospectively only." *Estate of Mason*, 493 Mass. at 167. They typically do not apply to conduct that pre-dates their enactment. *Id.* at 167-70.

A defendant can overcome the presumption against retroactive application of a statute of repose only by pointing to "a *clear* indication of legislative intent." *Id.* at 167 (emphasis added). Such legislative intent would appear, if at all, only by "<u>necessary</u> implication from their words, context or objects when considered in the light of the subject matter, the preexisting state of the law and the effect upon existing rights, remedies and obligations." *First Fed. Sav. & Loan Ass'n*, 428 Mass. at 373 (emphasis added). "Such implication must be 'unequivocally clear.'" *Smith v. Mass. Bay Transp. Auth.*, 462 Mass. 370, 377 (2012).

Defendant cannot meet his burden to prove that the medical-malpractice statute of repose has any such "clear indication of legislative intent." The legislature typically evinces any such intent for retroactive application by express language within the statute. *Smith*, 462 Mass. at 377; *see also Sliney v. Previte*, 473 Mass. 283, 288 (2015) ("Where there is no express legislative directive, this court generally applies the rule of interpretation that statutes operate prospectively."). For instance, in *Smith*, the SJC had no problem concluding that a statute should not apply retroactively because it "contain[ed] no express language of retroactivity." *Id.*

The same is true here. The medical-malpractice statute of repose is silent on retroactivity. The text of the statute, unlike some statutes of repose, does not provide for retroactive application. *See* G.L. c.260, § 4 (providing in relevant part: "in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of injury

upon which such action is based"). This stands in stark contrast with statutes of repose that expressly provide for retroactive application to overcome the presumption against retroactivity. *See, e.g.*, *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 888 S.E.2d 553, 561 (2023) ("We thus start our analysis by first determining whether the legislature has clearly indicated that the 2020 amendment [to the statute of repose] is to be applied retroactively. We easily conclude that it has because the 2020 amendment explicitly provides that it is to be applied to causes of action that have accrued on or after January 1, 1968."); *see also* Ala. S.B.159 (2024) (recently passed Alabama statute that immunizes fertility clinics from suit, which provides: "This section is intended to apply retroactively to any act, omission, or course of services which are not the subject of litigation on the effective date of this act.").

As in *Smith*, such silence does not make it "unequivocally clear" that the statute should apply retroactively.  Nor has Defendant pointed to anything else that would show—*necessarily*, no less—that the legislature had the highly unusual intent to provide for retroactive application of this statute of repose.

Dr. Berger cannot argue for retroactivity by positing a policy argument, such as claiming that applying the statute retroactively would effectuate the goals of the act. For instance, binding precedent provides that the fact that new legislation is intended to address an economic emergency does not support a legislative intent that it apply retroactively. *Smith*, 462 Mass. at 890-91. Accordingly, Dr. Berger's noting that the medical-malpractice statute of repose was intended to decrease liability—and thus decrease insurance premiums—cannot bolster an argument for retroactive application of the statute. *Id.*

On this front, too, the SJC has been clear: "To some degree, the purposes of almost any statute might be better achieved if the statute were applied retroactively. Yet, that retroactive

application of a new statute would vindicate its purpose more fully . . . is not sufficient to rebut the presumption against retroactivity." *Id.* at 891 (internal quotation marks omitted).

Here, where the medical-malpractice statute of repose is silent on retroactivity, the legislature was not "unequivocally clear" that it applies to pre-enactment conduct. Accordingly, the seven-year statute of repose does not apply retroactively. Because it was enacted in 1986, and Dr. Berger's fraudulent conduct occurred earlier in time, the statute of repose does not bar Ms. Depoian's claims.

> 2. The Appeals Court of Massachusetts Correctly Has Held That the Statute of Repose Does Not Apply to a Doctor's Post-Treatment Fraudulent Statements That Were Uttered to Shield the Doctor From Future Liability.

Because the medical-malpractice statute of repose does not apply retroactively, that should end the statute-of-repose analysis. There is no reason to assess further whether the statute of repose applies to the counts in this case.

However, even if the statute of repose were to apply retroactively, it still would not bar Ms. Depoian's claims. The Appeals Court of Massachusetts has held correctly that the statute of repose does not bar a doctor's post-treatment fraudulent statements, like those alleged in this case, that were uttered to shield the doctor from future liability.

> a. *Chace v. Curran*

In *Chace v. Curran*, the plaintiff's infant son was seriously injured when the defendant doctors provided substandard medical care during the son's resuscitation efforts. 71 Mass. App. Ct. at 259. The plaintiff originally filed negligence claims. *Id.* The complaint was filed many years after the substandard care because the plaintiff-parent did not discover that the defendants caused the harm to her son on account of the fact that the defendants had falsified the medical records after the treatment in order to cover up their negligence. *Id.* at 261. The superior court dismissed

the treatment-related claims because, even though they were only recently discovered, they were filed after the medical-malpractice statute of repose had lapsed. *Id.* at 259.

In an amended complaint, the plaintiffs alleged claims for fraudulent concealment and intentional misrepresentation-fraud. *Id.* at 261. The theory of those counts was that the doctors' hiding their misconduct in the son's patient files injured the plaintiffs by precluding them from gaining awareness of the misconduct, and thus prevented them from filing a malpractice action within the statute of limitations (and within the statute of repose). *Id.* at 261-62.

Unlike in the matter *sub judice*, the *Chace* doctors' fraud occurred after the legislature enacted the medical-malpractice statute of response. Nonetheless, the superior court held that the statute of repose did not bar the plaintiff's claims because it does not apply to physicians' fraudulent acts that are committed after the relevant treatment they performed on their patients. *Id.* at 260.

The doctors appealed, and the Appeals Court of Massachusetts affirmed in a published opinion. *Id.* at 262-68. The opinion starts by noting that the label of a claim does not dictate whether the medical-malpractice statute of repose applies, but instead, whether the claim is actually for medical malpractice. *Id.* at 262-63. With that understanding, the court assessed the nature of the claim that the plaintiffs filed:

> Both claims sound in fraud and allege the existence of a fiduciary relationship that gave rise to a duty on the defendants' part to disclose adequately to the plaintiffs facts that would give rise to knowledge of a cause of action for substandard care. . . .
>
> [T]he amended complaint is not a recasting of their original claims for medical malpractice. The newly amended allegations state that the defendants' fraudulent conduct resulted in a pecuniary loss that is not the type anticipated by the medical malpractice act. For example, the plaintiffs do not allege that [the son] suffered further personal injury or pain and suffering as a result of the defendants' omissions and misrepresentations, or that he could not take advantage of further medical treatment as a consequence. Instead, the plaintiffs seek recovery for an amount they

claim they could have recovered had they not lost the opportunity to file a timely action. In these circumstances, the proper measure of damages is compensation for the pecuniary loss, if any, suffered as a result of the misrepresentation and breach of fiduciary duty. Strictly speaking, those damages are not compensation for a personal injury incurred because of substandard medical care. . . . The difference, although subtle, is real and is not simply an exercise in re-labeling.

If the plaintiffs fail to prove that the defendants engaged in a fraudulent cover-up, then the quality of the care they actually received is of no relevance. If the plaintiffs are successful in proving fraud, however, then the quality of the defendants' care is relevant, but only because it supplies the measure of damages for their fraud. In other words, upon proof of fraud, evidence on the merits of the malpractice claim becomes, in effect, evidence on the issue of damages for fraud.

*Id.* at 264-65.

> b.   *Chace* compels the denial of Dr. Berger's motion to dismiss.

Recognizing the centrality of *Chace*, Dr. Berger asks this Court to conclude that the state appellate court erroneously interpreted state law, and also that Ms. Depoian's allegations do not fit within the parameters of the *Chace* framework. Neither argument withstands scrutiny.

> i.   *Chace* was decided correctly.

This Court should decline Dr. Berger's invitation to reject the Appeals Court of Massachusetts' reasoned, thorough opinion in *Chace*. The *Chace* court thoughtfully analyzed the plaintiff's claims and unanimously held that the State's medical-malpractice statute of repose does not encompass post-treatment fraud committed by physicians. Neither the text of the statute of repose nor the policy behind it applies to such claims.

As a threshold matter, Dr. Berger omits the deferential standard against which this Court must consider *Chace*. Whereas the SJC's opinions regarding state law are binding on this Court, interpretations of state law by the State's intermediate appellate court are accorded some degree of deference. *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 55 (1st Cir. 2008)

("entitled to some weight"). Especially against this backdrop, there is no reason to depart from the appellate court's unanimous interpretation of state law.

*Chace* correctly recognized that the "core" of the claims governs whether the medical-malpractice statute of repose applies. 71 Mass. App. Ct. at 262. The question, then, is whether the claims in *Chace* had a "core" that is of "the type anticipated by the medical malpractice act." *Id.* at 264. Answering that question in the negative, the court found that claims of fraud that stem from doctors lying about their *already-completed* treatment of a patient—in order to immunize themselves from liability in a malpractice lawsuit—are not claims that are subject to the Commonwealth's medical-malpractice scheme. *Id.* at 264. (*Cf. Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 56 (1987) ("The fraud action is separate and distinct from the medical malpractice action which stems from the surrounding facts where the decision to misstate the facts cannot be characterized as medical in nature.")).

Such claims of fraud, the *Chace* court held, do not allege, for instance, that the actionable conduct—the fraudulent conduct—led to further personal injury. *Id.* Nor did the fraudulent conduct cause the need for further medical treatment. *Id.*

Although the injury that the fraud caused is the failure to file an earlier claim for malpractice, the elements to prove the fraud count have nothing to do with substandard treatment: false representations, with knowledge of their falsity, for the purpose of inducing the plaintiff to act to her detriment. *Id.*; *see also id.* at 263 (reciting these elements of fraud). Such allegations, the court noted, are not the type that are "submi[tted] to a medical malpractice tribunal, whose sole purpose under [Massachusetts law] is to evaluate only the medical aspects of a patient's claim of malpractice." *Id.* at 267.

This conclusion is consonant with SJC precedent, which has consistently recognized the limited reach of the medical-malpractice act:

> On numerous occasions, we have said that the apparent legislative purpose in enacting legislation requiring screening [of claims by the malpractice tribunal] "was to discourage frivolous claims whose defense would tend to increase premium charges for medical malpractice insurance." It is true, as the defendant argues, that allowing the tribunal to examine legal and factual issues beyond the purely medical questions raised in a malpractice suit will serve that purpose. Carried to its logical conclusion, however, the defendant's argument would turn the tribunal procedure into a miniature trial of all issues. Although this "trial" would presumably be quicker and cheaper than a full-blown trial to a jury, we cannot believe that the Legislature envisaged so broad a role for the tribunal. Rather, we think the language quoted above . . . should control here: the tribunal should simply examine the evidence proposed to be offered on behalf of the patient to determine whether that evidence, "if properly substantiated," would establish a case of "malpractice, error or mistake" against the health care provider or whether, instead, the patient merely experienced "an unfortunate medical result."

*McMahon v. Glixman*, 379 Mass. 60, 68–69 (1979) (internal citations and footnotes omitted).

In other words, the "core" of the post-treatment fraud claims in *Chace* are not the claims of "malpractice, error or mistake" that are envisioned in the medical-malpractice statute of repose.

*Chace* makes even more sense in light of the purpose of the statute of repose, which concerned decreasing medical-malpractice insurance claims. Fraud and other acts of intentional misconduct are typically not covered by medical-malpractice insurance. Thus, the counts in *Chace*, as here, do not implicate the purpose behind the statute of repose.

Had the SJC disagreed with *Chace*, it had a clear opportunity to reverse the opinion, and expressly decided not to do so. It declined to review *Chace*, without any dissent. 451 Mass. 1103 (2008).

*Joslyn v. Chang*, 445 Mass. 344 (2005), does not counsel a different result. In *Joslyn*, the SJC held that the statute of repose cannot be tolled or equitably estopped for medical-malpractice claims, even if the plaintiff was not made aware of the facts to support the claim on account of a

doctor's fraudulent concealment. 445 Mass. at 350-51. In that case, the plaintiffs brought a claim for medical malpractice that was rendered during treatment, not for fraud that the doctor perpetrated after treatment concluded. *Id.* at 344. The elements of the claim in *Joslyn* therefore concerned substandard medical care, not the elements of fraud, and thus liability could be assessed by the medical malpractice tribunal. Stated differently, liability in *Joslyn* would have turned on the type of "malpractice, error or mistake" specified in the medical-malpractice statute of repose.

Indeed, *Chace* distinguished *Joslyn* for that precise reason. 71 Mass.App.Ct. at 266. The question in *Chace* was not whether the statute of repose could be tolled but whether claims for post-treatment fraud are subject to the statute of repose at all.

Similarly, a case cited by Dr. Berger, *Sullivan v. Iantosca*, 409 Mass. 796 (1991), does not at all stand for the proposition claimed by Dr. Berger—that the statute of repose necessarily applies to all claims for intentional misrepresentation. (Motion at 8.) Instead, *Sullivan* expressly carved out from its holding situations where fraudulent concealment took place (as here) independent from previous misconduct that does not form the legal basis for the claim. *Id.* at 798 n.3.

Nor does *Hayden v. McKeon*, 2023 Mass.App.Unpub.LEXIS 426 (Aug. 28, 2023), bolster Dr. Berger's argument. In *Hayden*, the Appeals Court of Massachusetts affirmed the dismissal of fraud claims against a doctor, not because of the statute of repose, but because those fraud claims could have been brought—but were not—much earlier, when the plaintiff previously had filed claims of malpractice against the doctor. *Id*. at *4. Thus, the superior court dismissed the later-filed fraud claims due to *res judicata*. *Id.* Affirming the dismissal on grounds of *res judicata*, the court expressly reaffirmed the validity of *Chace*. *Id.,* at *4 & n.6.

In sum, there is no reason to depart from the appellate opinion in *Chace*. That unanimous opinion thoroughly analyzed and applied precedent from the SJC. The SJC then denied review.

Especially in light of the weight that is accorded decisions from the intermediate court of appeals, the *Chace* opinion should not be disturbed.

        ii.   Dr. Berger's misconduct mirrors the actions at issue in *Chace*.

Dr. Berger's attempt to distinguish *Chace* is similarly unavailing. As in *Chace*, Dr. Berger's fraud was limited to post-treatment misrepresentations.

The parties agree on *Chace*'s holding: "plaintiffs' claims were not barred by the [s]tatute of [r]epose because the defendants' fraud was limited to post-treatment misrepresentations." (Motion at 15.) However, Dr. Berger then contorts Ms. Depoian's complaint to conclude that her claims are not grounded in post-treatment misrepresentations. It has long been recognized that the plaintiff, not the defendant, is the "master of her complaint."

In fact, the *sole* basis for Ms. Depoian's claims is Dr. Berger's post-treatment misstatements and concealment. On multiple occasions—all after the insemination that led to Ms. Depoian's pregnancy with her daughter—Dr. Berger fraudulently conveyed to Ms. Depoian the (false) statement that he had used the sperm of a donor who was not himself. The actionable fraudulent statements were not made before or during the insemination that led to Ms. Depoian's pregnancy with her daughter. Nor were they uttered for purposes of facilitating that pregnancy; by that point, the treatment had concluded.[*]

Contrary to Dr. Berger's contentions, the fraudulent statements were not the "same acts that gave rise to the underlying claim." As a threshold matter, there is no "underlying claim" here. But moreover, any malpractice claim would have been based on Dr. Berger's medical treatment of

---

[*] Dr. Berger seems to concede that his first such misstatement (shortly after he performed the insemination) was not part of her treatment. He contends that another such misstatement (when Ms. Depoian saw him to discuss her second insemination) was part of her treatment, insofar as he was treating Ms. Depoian for a *different* pregnancy. Crucially, however, this subsequent instance of fraud was not part of the treatment that led to the birth of Ms. Depoian's daughter. Both parties thus agree that the later fraudulent act was separate from, and subsequent to, the treatment to which Dr. Berger was referring at the time.

Ms. Depoian, whereas the fraudulent statements concerned Dr. Berger's separate, post-treatment attempts to avoid a public lawsuit. Those different acts (the treatment versus the post-treatment fraud to avoid liability) lead to very different claims, with entirely different elements of proof.

This scenario is no different from what transpired in *Chace*. In *Chace*, as here, the doctor provided substandard care; but then faced liability for fraud as a result of his post-treatment statements that were uttered to avoid his own liability. As *Chace* itself noted: "The difference, although subtle, is real and is not simply an exercise in re-labeling." 71 Mass. App. Ct. at 265.

Accordingly, this case is remarkably similar to *Chace*. Dr. Berger's alleged fraud concerns only his post-treatment misrepresentations to Ms. Depoian. Thus, even if the statute of repose were to apply retroactively (which it does not), that time limitation does not apply to the claims pled in this lawsuit.

### B. Plaintiff Alleged Fraudulent Concealment as an Anticipated Response to a Statute of Limitations Defense and Sufficiently Pled a Count for Fraud/Intentional Misrepresentation (Count II)

*Count I*: Defendant asks this Court to dismiss the Count of Fraudulent Concealment (Count I) because it should not be a standalone Count under Massachusetts law. (Motion at 4-5.) Plaintiff alleged this Count as a pre-emptive response to any later suggestion by Dr. Berger that the statute of limitations (separate from the statute of repose) should bar her claims.

Pursuant to Massachusetts general law chapter 260 § 4, a plaintiff has three years from the date of the relevant incident to file a complaint for fraud. However, when a defendant fraudulently conceals a cause of action from the knowledge of a plaintiff, the statute of limitations is tolled under G. L. c. 260, § 12, until plaintiff discovers her cause of action. "Where a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge

13

of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment for purposes of applying § 12." *Demoulas v. Demoulas Super Mkts*., 424 Mass. 501, 519 (1997).

While it is a normal practice to include such a Count when alleging recently-discovered misconduct, Ms. Depoian has no objection to the dismissal of Count I, so long as Dr. Berger is on notice that Plaintiff intends to demonstrate she was unaware of her claims any earlier due to his concealing his fraud.

*Count II*: Defendant provides no justification for dismissing Count II (Fraud/Intentional Misrepresentation). (Motion at 4-5.) While he states that Count II should be dismissed, he seems to rely solely on his argument that fraudulent concealment (Count I) is not a separate count under state law. (*Id.*)

Ms. Depoian's fraud claim (Count II) faithfully alleges and applies the elements of fraud. *AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 928 F. 3d 110, 122 (1st Cir. 2019) (citing *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 471 (2009) (providing elements)). Crucially, Dr. Berger does not argue otherwise. Accordingly, Count II should not be dismissed.

### C.  Plaintiff Sufficiently Pled Count III – Violation of Chapter 93A

Dr. Berger challenges the Chapter 93A count by contending that it merely repeats the allegedly non-viable count for fraud, and thus itself is not viable. He also mis-reads the Complaint when he claims it fails to allege Dr. Berger committed his fraud for a non-commercial purpose.

*First*, while it is true that a Chapter 93A claim must fail when it is based on conduct that itself is not wrongful, *Park Drive Towing, Inc. v. City of Revere*, 442 Mass. 80, 85-86 (2004) (cited in Motion at 18), that is not the case here. As discussed above, Ms. Depoian has alleged a viable fraud count against Dr. Berger. Indeed, Dr. Berger does not even argue that Count II

14

(fraud/intentional misrepresentation) fails to allege the requisite elements of that claim. *See supra* Section IV.B.

*Second*, Dr. Berger misses the mark when he argues that Chapter 93A does not apply to cases involving medical treatment. If this case were a medical-malpractice action that centered on substandard care provided to Ms. Depoian, she could not assert a violation of the consumer-protection statute. However, this is a case that centers on (post-treatment) fraud, which is conduct the consumer-protection statute proscribes. Plaintiff's allegations supporting the chapter 93A cause of action are similar to those supporting her fraud count. Because Plaintiff has sufficiently pled her fraud cause of action, the same is true for her 93A claim.

*Third*, Defendant argues erroneously that Plaintiff failed to allege that Dr. Berger's fraud related to his engagement in trade or commerce, a requisite element of the Count. (Motion p. 18). In fact, Ms. Depoian expressly alleged that he perpetrated his fraud "in furtherance of his own commercial . . . benefit." (Complaint ¶ 62.)

Although Dr. Berger then complains this allegation is too conclusory, Ms. Depoian's complaint provides some examples of how the fraud was connected to Dr. Berger's commercial benefit. For instance, one of the instances of Dr. Berger's fraud occurred when he was trying to convince Ms. Depoian to pay him to perform a different, subsequent insemination. (Complaint ¶ 35.) More broadly, Dr. Berger perpetrated his fraud to avoid Ms. Depoian's filing a public lawsuit against him for committing an egregious and salacious act, *see, e.g.*, *id.* ¶ 48, which of course would have decimated his business, *see id.* at ¶ 6.

There is no question that Defendant perpetrated his fraud for a commercial purpose. But even if there were some doubt, that assessment—whether a party was engaged in trade or commerce—is generally "determined by the facts of each case, on consideration of the nature of

the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons." *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835, 849-50 (2017) (citing *Feeney* v. *Dell Inc.*, 454 Mass. 192, 212 (2009) (quotations and citations omitted)). "This determination is typically for the trier of fact and is preferably decided on a fuller record rather than on a motion to dismiss." *Id.* (citing *Brown* v. *Gerstein*, 17 Mass. App. Ct. 558, 570-71 (1984); *Schinkel* v. *Maxi-Holding, Inc.*, 30 Mass. App. Ct. 41, 50 (1991)).

The allegations in the complaint more than plausibly suggest facts, if proven true, that Dr. Berger engaged in fraud for the purpose of furthering his business development. The Chapter 93A Count should not be dismissed at this early stage.

### D.  Certification is Not Warranted

This Court should not accept Dr. Berger's attempt to delay this matter by certifying a highly argumentative question to the SJC. Most importantly, the threshold issue of non-retroactivity moots the question over which Dr. Berger seeks certification. Moreover, even if that were not the case, certification is unwarranted because is it reasonably clear how the SJC would rule on the proposed question.

Defendant asks this Court to certify a question of "whether a patient can plead around the Statute of Repose by merely adding claims for fraudulent concealment and/or c. 93A." (Motion at 19.) However, the statute of repose is necessarily not applicable here because it does not apply retroactively. Accordingly, the proposed question is "not determinative of the pending cause of action," Mass. S.J.C.R. § 1:03, and thus cannot be certified to the SJC. This should be the end of the certification analysis.

Moreover, even if the statute of repose were to apply retroactively, certification still would unwarranted because it is reasonable to conclude that the SJC would affirm *Chace*. Certification is not appropriate, even when "the highest state court has not issued a definitive ruling on the precise issue at hand," whenever "the federal courts may refer to analogous decisions, considered dicta, scholarly works, or other reliable sources to ascertain how the highest court would rule." *Bingham v. Supervalu Inc.*, 2015 U.S.Dist.LEXIS 42925, *24 (D. Mass. March 25, 2015) (citing *Losacco v. F.D. Rich Constr. Co.*, 992 F.2d 382, 384 (1st Cir. 1993)); see also *Sarro v. Philip Morris USA, Inc.*, No. 08-10224-MLW, 2010 U.S. Dist. LEXIS 46450, at *12 (D. Mass. May 12, 2010) (providing that it is appropriate to certify a question to the SJC only if there is no controlling SJC precedent and the court cannot, through consideration of the relevant case law, determine the state law).

In *Bingham*, plaintiff sought to certify a state-law question to the SJC. *Bingham*, 2015 WL 1387857, at *10. Judge Boal recommended a denial of certification, which Judge Talwani adopted, stating that while the SJC had not addressed the issue, "the Court is able to determine with reasonable clarity the course that the SJC would take in this case." *Id*.

Here, not only was the unanimous *Chace* opinion correctly decided as a matter of SJC precedent, but the intermediate appellate court recently reaffirmed the opinion (again, without dissent). *See supra,* Section IV.A.2.b.i. Moreover, the SJC could have taken up this question when it was asked to review *Chace*, but expressly decided that it need not review the opinion. *Chace*, 451 Mass. at 1103.

Accordingly, the request for certification should be denied. The question is not dispositive to the outcome of this case (due to the non-retroactivity of the statute of response). Moreover, even if the question were relevant to this case, it is reasonably clear how the SJC would rule.

## IV.   REQUEST FOR ORAL ARGUMENT

Ms. Depoian respectfully requests oral argument regarding the motion to dismiss.

## V.   CONCLUSION

For the aforementioned reasons, Ms. Depoian respectfully requests that the Court deny

Defendant's motion to dismiss.


Dated: March 11, 2024                              Respectfully submitted,

                                                   */s/ Paula S. Bliss*
                                                   Paula S. Bliss, Esq., BBO#652361
                                                   Kimberly Dougherty, Esq., BBO# 658014
                                                   Justice Law Collaborative, LLC
                                                   210 Washington St.
                                                   North Easton, MA 02356
                                                   paula@justicelc.com
                                                   kim@justicelc.com

                                                   And

                                                   Adam B. Wolf, Esq. (admitted *pro hac vice*)
                                                   Peiffer Wolf Carr Kane Conway & Wise,
                                                   LLP
                                                   3435 Wilshire Blvd., Ste. 1400
                                                   Los Angeles, CA 90010
                                                   awolf@peifferwolf.com


### CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the ECF system and will be

sent electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF) and paper copies will be sent to those indicated as non-registered participants on March

11, 2024.

                                                   */s/ Paula S. Bliss*
                                                   Paula S. Bliss, Esq